## John H. Munroe *vs.* Albert Woodruff and Jeremiah R. Robinson.

The fact that the notary, in the city of New York, employed *clerks* to perform part of the duties incident to his office, is no valid objection to a protest; the custom of merchants and the current of authorities sanction the employment of such aid in large commercial cities.

A commission to take testimony was endorsed, "the execution of this commission appears in a certain schedule hereunto annexed," which endorsement was signed by the commissioner *as such*, and sealed. Held:

That this was a sufficient authentication and return, notwithstanding the commissioner signed his name at the conclusion of the commission as *Notary Public*.

This court in passing upon a prayer contained in an exception, is confined to the evidence embraced in the exception, and if there is no evidence to support the prayer it is erroneous.

A prayer that the plaintiffs are *entitled to recover* upon the finding of certain facts, omitting entirely other material facts necessary to the maintenance of the action, is erroneous; no matter how clear the evidence may have been to prove such facts, it is necessary for the jury to pass upon it.

Appeal from the Circuit Court for Prince George's county.

*Action,* brought on the 16th of January 1858, by the appellants as holders, against the appellee as endorser, of five promissory notes, all drawn by George W. Harrison, and purporting to be endorsed by James M. Benton, Elizabeth Harrison and the defendant, and all dated at Alexandria, Va., and payable at the Bank of the Republic, in the city of New York. Plea, no promise as alleged.

The protests of these notes, purporting to be made as they respectively matured, by Gardiner Spring, Jr., Notary Public in the city of New York, are in the usual form, stating that at the request of the Mechanics Bank of that city, the holder of said notes, he duly presented, each of them, to the paying teller of the Bank of the Republic in said city, and demanded payment thereof, which was refused, &c. A commission was issued to the city of New York, under which testimony in reference to the protests and notices of protests of these notes, was taken and returned, from which it appears the witnesses testified in substance as follows:

*Spring*, the notary, says he protested the notes as they respectively matured, through the agency of George Ireland, Jr., *his clerk*, who was also a notary, acting as such for said Mechanics Bank; that none of these notes were presented by witness personally, but the presentments were made, as appears by his notarial register, either by George Ireland, Jr., John Hickson, Jr., or William C. Ford, *who were all at that time acting in his employment.*

*Hickson*, says, he presented, on the days they respectively matured, two of the notes, which he specifies, to the said Bank of the Republic, and demanded payment thereof, which was refused, and on the days respectively following the protests of each of said *five notes*, he deposited in the post office in the city of New York *"notices of protest,"* postage prepaid, of each of said notes, severally addressed to James M. Benton, Elizabeth Harrison and John H. Munroe, Alexandria, Va.; that every one of these notices so mailed by him was filled up from a printed form, signed by said Spring, as notary, similar in every respect to the following.

*New York,* —— — 1857.

$ —— Please take notice that a promissory note made by —— for $ — dated —— payable —— and endorsed by you, is this day dishonored and duly protested for non-pay; ment, and that the holders look to you for the payment thereof;" that said printed form was in each case filled up with the amount, date of protest, and place of payment of each note; and that the said Mechanics Bank was the agent of the plaintiffs at the time of these protests.

*Ireland* and *Ford,* prove, that *as clerks* for said Spring, (the former being also himself a notary,) they presented the other three of said notes, on the days they respectively matured, to said Bank of the Republic, and demanded payment thereof, which was refused.

This commission to the city of New York was directed to Jonathan S. Ely, as commissioner, and the record states that "the said commissioner, Jonathan S. Ely, Esquire, returned said commission, together with his return thereto, and sundry other papers connected therewith, which are in the words

following, to wit," &c., and at the conclusion of the commission the signature is *"Jonathan S. Ely*, Notary Public," but on the back of the commission is this endorsement: "The execution of this commission appears in a certain schedule hereunto annexed," which is signed *"Jonathan S. Ely*, Commr. (Seal.")

A commission was also issued to Alexandria, Va., under which testimony was taken and returned, but as the record does not show that this evidence was offered or used by either party it need not be stated.

*1st Exception.* The plaintiffs offered in evidence the protests made in the city of New York, by Spring, the notary public, and the evidence taken under the commission issued to Ely, of that city, for the purpose of showing a sufficient demand of payment and notice of dishonor to the defendant, as endorser of the notes sued on. The defendant objected to the sufficiency of said proof for the purpose for which it was offered, but the court (CRAIN, J.) overruled this objection and permitted said proof to go to the jury as sufficient evidence to prove a demand and notice to the defendant to bind him as endorser. To this ruling the defendant excepted.

*2nd Exception.* After the evidence detailed in the preceding exception, made part of this, the defendant proved by Benton, the first alleged endorser on all of said notes, (who, after objection sustained to his competency, was restored thereto by a release of the defendant from all liabilities on account of his said alleged endorsements, made in open court and reduced to writing,) that his own name, as payee, and first alleged endorser of said notes, was not in his own proper handwriting, but was a forgery made by the maker of said notes, and that the names of Elizabeth Harrison and of the defendant was also not in their handwritings respectively, but were attempted imitations thereof. (The residue of this exception is fully set out in the opinion of this court.) The verdict and judgment were in favor of the plaintiffs and the defendant appealed.

The cause was argued before LE GRAND, C. J., TUCK, BARTOL and GOLDSBOROUGH, J.

Munroe *vs.* Woodruff & Robinson.

*Thos. F. Bowie,* for the appellant:

1st. The commission to New York was not properly returned. It directs that it shall be returned under the hand and *seal* of the *commissioner;* he signs it as *Notary Public,* and without a seal. It also directs that the witnesses shall be sworn "on the Holy Evangelist of Almighty God," whereas the return states simply that the witnesses were "duly sworn." For these reasons the return was defective, and the court below was wrong in admitting the evidence taken under it, as *sufficient* evidence to prove demand and notice, upon objection being made to "*the sufficiency of said proof.*" 4 *Md. Rep.,* 368, *Young & Wife vs. Mackall.*

2nd. But even if the evidence was admissible, it was not sufficient to prove *demand* and *notice.* The notary proves that he neither made the demands, nor even the protests, but that he did it through *his clerks.* One of such clerks only sent the *notices,* whilst the demands were made, some by one, and some by others of such clerks.

3rd. The rulings in the second exception was also erroneous. There is no evidence embraced in the exception, upon which the instruction of the court could be based, and besides it omits to put to the finding of the jury material facts necessary to entitle the *plaintiffs to recover.* But besides the doctrine contended for on the other side, upon this exception, that the last endorser admits the signatures of the previous endorsers, does not apply to cases where he did not know that such previous endorsements were forgeries.

*C. C. Magruder* and *Thos. G. Pratt,* for the appellees:

1st. There can be no valid objection to the return of the commission, for though the return in the body of the commission is signed by Ely as *Notary Public,* yet he signs and *seals,* as *commissioner,* the endorsement thereon, which states: "The execution of this commission appears in a certain schedule hereunto annexed." This is a sufficient authentication and return.

2nd. The evidence was sufficient to show a demand and *notice* of *protest* to the defendant; it clearly shows that the

demands were properly made; that the protests were made by a notary public, and that due notices of these protests was given to the defendant, and it can make no difference that in such a large commercial city as New York, that a part of this duty was done by the *notary's clerks. Story on Prom. Notes, secs.* 246, 301. 8 *Wheat.*, 326, 331, *Nicholls vs. Webb.* 2 *H. & G.*, 479, *Agnew vs. Bank of Gettysburg.* 6 *H. & J.*, 172, *Bank of Columbia vs. Magruder.*

3rd. The instruction of the court in the 2nd exception was also correct, the proposition of that instruction being, that if the name of Munroe, the last endorser, was placed upon these notes, by him or by his authority, then that he thereby admits the endorsements by the preceding parties to the notes to be genuine and cannot deny them. *Story on Prom. Notes,* 135. *Bailey on Bills,* 486. 1 *Binney,* 27, *Levy vs. Bank of United States.* 7 *Yerger,* 310, *Harris vs. Bradley.* 12 *Mod.,* 244, *Lambert vs. Oakes.* 1 *Salk.,* 127, *Lambert vs. Pack.* 1 *Strange,* 442, *Bomley vs. Frazier.* 2 *Barnardiston,* 82, *Williams vs. Seagrave.*

GOLDSBOROUGH, J., delivered the opinion of this court.

The appellees instituted suit in the circuit court for Prince George's county against the appellant, to recover the amount of five promissory notes, of which George W. Harrison was the drawer, and the appellant, together with James M. Benton and Elizabeth Harrison, were endorsers.

The appellant pleaded that he did not promise as alleged, and the appellees, by their replication, joined issue thereon.

At the trial of this cause, the appellees offered in evidence to the jury, the testimony taken under a commission to Jonathan S. Ely, of the city of New York, for the purpose of showing a sufficient demand of payment and notice of dishonor to the appellant, as endorser, but the appellant's counsel objected to the sufficiency of said proof for the purpose for which it was offered, but the court overruled the objection and permitted the proof to go to the jury as sufficient evidence to prove a demand and notice, to bind the appellant, as endorser. The defendant then offered the evidence of James

M. Benton, contained in the second exception, and prayed the court to instruct the jury that if they should find from the evidence that the names of James M. Benton and of Elizabeth Harrison, as alleged endorsers, on said notes, were not in their proper handwriting respectively, but were forgeries, and made by the said maker of the notes, without their knowledge or consent, that then they must find a verdict for the defendant, but the court refused said prayer of the defendant, but instructed the jury, that notwithstanding they may find that the names of James M. Benton and Elizabeth Harrison, the alleged first and second endorsers on said notes were forgeries, yet if they found from the evidence that the signature of John H. Munroe, the defendant, the alleged last endorser, was in his own proper handwriting, or made by his authority, that the plaintiffs were entitled to recover in this action. To which opinion of the court, and to its instruction to the jury, the defendant excepted, and the verdict and judgment being against him, he appealed to this court.

The ruling of the court below in the first exception, we approve. By reference to the commission and the testimony taken under it, and which was submitted to the jury, it will appear that the several notes in controversy in this suit, were regularly protested, and the several protests, under the notarial seal of the notary, contain every material allegation of a proper protest. It was objected by the appellant's counsel that the notary employed clerks to perform part of the duties incident to his office. We cannot regard this as a valid objection. In a commercial community so extensive as New York, it would be almost impossible for a notary to execute every portion of his duty without aid, and the custom of merchants, and the current of authorities upon this subject, sanction the employment of such aid.

It was also objected that the commission, when executed, was not properly authenticated and returned. This objection, we conceive, has no weight. It will be seen by reference to the record, that the commissioner, Jonathan S. Ely, returned "said commission together with his return thereto, and sundry other papers connected therewith, which are in

the words following, to wit," &c., and at the conclusion of the commission, though he signs his name as Notary Public, yet the commission is endorsed, "the execution of this commission appears in a certain schedule hereunto annexed. Jonathan S. Ely, Commr. *Seal.*"

The second exception seems to have been very hastily and imperfectly drawn, and does not present the question upon which, we suppose, the circuit court decided. If the evidence taken under the commission in Alexandria had been embraced or referred to in this exception, we should be prepared to affirm the action of the circuit court upon the defendant's prayer. But we are compelled to deal with the exception as it is brought before us, and must reverse the judgment both upon the refusal of the defendant's prayer and the instruction granted by the court. This last is liable not only to the objection, before stated, of having no evidence to support it, set out in the exception, (to which we are confined in passing upon the prayer,) but it is also liable to the objection that it informs the jury that the plaintiffs *are entitled to recover*, upon the finding only that the signature of the defendant was in his proper handwriting or made by his authority. Thus omitting, entirely, material facts which were necessary to the maintenance of the action, and however clear the evidence may have been to prove the facts, it was necessary for the jury to pass upon it. See 10 *Md. Rep.*, 346, and 16 *Md. Rep.*, 445, and the cases there cited.

*Judgment reversed and procedendo awarded.*

(Decided March 27th, 1861.)